GRADY SHEETS, LAURA SHEETS, AND LAURA SHEETS, GUARDIAN OF JAMES SHEETS, v. J. G. FLYNT TOBACCO COMPANY AND H. C. SHEETS.

(Filed 31 January, 1928.)

**1. Guardian and Ward—Care of Ward's Estate—Liability of Guardian.**

In the investment of funds belonging to his ward, the guardian is not liable for a loss to the estate by reason only that he has not followed the statutory directions in making the investments, if he has exercised a sound discretion commensurate with his duties, and good faith upon inquiry, and caution, to the interest that the *corpus* of the estate be preserved and a reasonable income, as required by law, be provided for his ward; and when the statutory requirements as to the kind and nature of the investments has been followed, to attach a personal liability on him, or liability on his surety, it must be made to appear that he acted in fraud or gross negligence in respect to the duties the law imposes on him.

**2. Guardian and Ward—Care of Ward's Estate—Liability of Third Parties —Primary and Secondary Liability.**

The liability of a guardian for an investment of funds of his ward in the preferred stock of a private corporation, is primary, and must be established before a judgment against the corporation for selling the stock and accepting payment with the knowledge that the guardian had therein wrongfully used funds belonging to the ward's estate.

APPEAL by defendant, J. G. Flynt Tobacco Company, from judgment of *Finley, J.,* at February Term, 1927, of FORSYTH. Reversed.

Action to recover of defendant company a sum of money received by it from the guardian of plaintiffs as the price of preferred stock purchased by said guardian as an investment of funds in his hands, belonging to plaintiffs as his wards.

From judgment of Superior Court, affirming the judgment of the county court of Forsyth County, defendant Tobacco Company appealed to the Supreme Court.

*Fred M. Parish* for plaintiffs.
*Hastings & Booe* and *Manly, Hendren & Womble* for defendant Tobacco Company.
*Richmond Rucker* for defendant *H. C. Sheets.*

CONNOR, J. This action was begun in the county court of Forsyth County on 2 February, 1926. In their complaint filed in said court plaintiffs demand judgment that they recover of defendant, J. G. Flynt Tobacco Company, the sum of $9,000, with interest thereon from 2 June, 1921.

After the complaint was filed, upon motion of defendant Tobacco Company, H. C. Sheets was made a party defendant. No judgment or relief against said defendant was demanded by plaintiffs; the Tobacco Company, however, in its answer to the complaint alleged "that if there is any liability accruing against any one on account of the matters and things set out in the complaint, it is the liability in the first instance of said H. C. Sheets." At the close of the evidence on the trial in the county court, upon his motion for judgment as of nonsuit, the action was dismissed as to defendant, H. C. Sheets. Upon the verdict, and upon admissions made in the pleadings and during the trial, judgment was rendered that plaintiffs recover of defendant, J. G. Flynt Tobacco Company, the sum of $9,000, with interest thereon from 2 June, 1921. It was stipulated, however, by and between the parties that this judgment should be credited with the sum of $1,890, this being the total amount of the dividends on the preferred stock of defendant company, issued to and held by H. C. Sheets, guardian of plaintiffs, which were paid by said company to said guardian from 2 June, 1921, to 1 February, 1924. This stipulation is incorporated in the judgment. Defendant, H. C. Sheets, duly accounted for said dividends paid to him by defendant Tobacco Company.

It appears from admissions made in the pleadings that on 2 June, 1921, H. C. Sheets, father of plaintiffs, each of whom was at said date an infant, was their guardian. He had in hand, as such guardian, the sum of $9,000, in cash, which sum he had received as part of the estate of his wards, each being entitled to one-third thereof. For the purpose of investing said sum, in order that he might receive therefrom an income for his wards, he purchased, as guardian, of defendant, J. G. Flynt Tobacco Company, a corporation, organized and doing business under the laws of the State of North Carolina, ninety shares of its pre-

ferred stock, of the par value of $9,000; he paid for said shares of stock the sum of $9,000, using for that purpose the money in his hands belonging to the estate of his wards; he caused the certificates for said shares of stock to be issued to him as guardian.   The defendant, J. G. Flynt Tobacco Company, sold said shares of stock to H. C. Sheets, received from him the said sum of $9,000, and issued to him as guardian the certificate for same, with knowledge that H. C. Sheets was guardian of plaintiffs, and that he had purchased said stock as such guardian, as an investment of funds in his hands belonging to his wards.   Dividends declared on said stock were paid by said company to said H. C. Sheets, as guardian.   The last dividend was paid on or about 1 February, 1924. Since said date the business of said defendant company has not prospered, and at the commencement of this action said preferred stock was not worth par.

The plaintiffs, Grady Sheets and Laura Sheets, became of age in 1924; thereafter, H. C. Sheets, without contest on his part, was removed as guardian of James Sheets, who has not yet arrived at the age of twenty-one, and Laura Sheets was duly appointed as his guardian. Thereafter, on 2 February, 1926, plaintiffs began this action to recover of defendant, J. G. Flynt Tobacco Company, the sum of $9,000, with interest from 2 June, 1921.

Plaintiffs contend that they are entitled to recover said sum of said defendant, for that their guardian, H. C. Sheets, was without power or authority as such guardian to invest funds belonging to them in the purchase of preferred stock of said company; that said company knew that said guardian was without such power or authority and received and now holds said sum without any right or title to same; and that plaintiffs, upon surrender of said certificate of stock, are now entitled to recover of said company said sum with interest thereon from the date of its receipt.

Defendant contends that the guardian had the power and authority to invest said sum in the purchase of its preferred stock and that such purchase was made in good faith and after due diligence on the part of the guardian; that if such purchase was made without good faith or without due diligence on the part of said guardian, said defendant was without knowledge of such lack of good faith or due diligence.   Other matters in defense of plaintiffs' right to recover in this action are set up in the answer.

The judge presiding at the trial in the county court, after the pleadings had been read, and before any evidence had been offered, stated that he was of opinion that the purchase by the guardian of stock of defendant company, as an investment of funds in his hands as guardian, was unlawful, for that such investment was not authorized by statute in

North Carolina, and was in violation of principles of law applicable to such investments. It is conceded that there is no statutory authority in this State for the investment of guardian funds in the stock of a private corporation; it is contended, however, by defendant that such investments are not prohibited, either by statute or by any general principles applicable to investments by guardians. In accordance with the Court's opinion as stated above, the first and second issues were submitted to the jury, as determinative of plaintiff's right to recover in this action. The Court declined to submit issues tendered by defendant company, presenting matters relied upon by said defendant, in its answer as defenses to plaintiff's right to recover in this action. Defendant's assignments of error, based upon exceptions to the issues submitted and to the refusal to submit the issues tendered by it, were not sustained on its appeal to the Superior Court, and the judgment of the county court was affirmed. In this, defendant on its appeal to this Court from the judgment of the Superior Court, contends that there was error, for which the judgment of the Superior Court should be reversed to the end that a new trial in the county court may be ordered.

We have thus presented for decision by this Court as the preliminary question involved in this appeal, whether a guardian who has in hand funds belonging to his ward, which he is required by law to invest, is authorized to invest such funds in the purchase of stock of a private corporation. This question does not involve, in the first instance, the further question as to whether a guardian who has made such an investment is liable for losses resulting from an unwise or improvident investment in such stock. He may be held liable for such losses, although he had authority to purchase the stock, as guardian, and to pay for same with guardianship funds. The fact that he has made an investment of such funds, which he was authorized to make, does not relieve him of liability for losses sustained by reason of such investment, if in making the particular investment he failed to act in good faith and with due diligence.

A guardian is generally authorized to make any investment of funds in his hands, belonging to his ward, which, in his best judgment, arrived at in good faith and after the exercise of due diligence, will secure the principal of said fund, and yield a reasonable income therefrom for the benefit of his ward's estate. All that can be, and all that should be required of him, in making any investment is that he shall conduct himself faithfully, and shall, at the time, exercise a sound discretion. The principle stated in *Harvard College v. Amory*, 26 Mass., 446, and approved generally by the courts of this country, is fair to the guardian and just to the ward. "He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to specula-

tion, but in regard to permanent disposition of their funds, considering the probable income as well as the safety of the capital to be invested." In support of this principle, it is said in the opinion in that case: "Trustees are justly and uniformly considered favorably, and it is of great importance to bereaved families and orphans, that they should not be held to make good losses in the depreciation of stocks or the failure of the capital itself, which they hold in trust, provided they conduct themselves honestly, and discreetly and carefully, according to the existing circumstances, in the discharge of their trusts. If this were held otherwise, no prudent man would run the hazard of losses, which may happen without any neglect, or breach of good faith." Guardians are not liable as insurers of investments made by them, whether such investments are made with or without statutory authority, or with or without express approval of the court having jurisdiction in the premises.

It is well settled that a guardian and the sureties on his bond are liable to his ward for all moneys collected or received by him as such guardian, and not properly accounted for on the final settlement of the guardianship. *Loftin v. Cobb,* 126 N. C., 58. He is liable not only for the principal sums collected or received by him as guardian, but also for interest or a reasonable income from such sums. In *Gary v. Cannon,* 38 N. C., 64, *Ruffin, C. J.,* says: "It is the duty of a guardian to keep the ward's money at interest and on good security; and that, under the penalty of being answerable for compound interest, if he will not reasonably endeavor to make it, and for the debt, if he allows it to remain on insufficient security. The Court, therefore, never undertakes to decide to whom a guardian shall lend money, nor how long he shall lend to a particular person. The investments are in the guardian's discretion, as they are upon his responsibility." For any loss or losses sustained by his ward's estate, by reason of investments made of guardian funds by the guardian, resulting from a breach of his duty with respect to such investments, the guardian and the sureties on his bond are liable.

Inasmuch as the law imposes upon a guardian the duty to invest funds in his hands, belonging to his ward, it must follow that the guardian has power and authority, with respect to making investments, commensurate with this duty. In the exercise of this power and authority, conferred upon him in order that he may perform his duty, the guardian is and should be held to a high degree of diligence and good faith. In *Cobb v. Fountain,* 187 N. C., 335, it is said: "As a general rule, a guardian may discharge himself at the termination of his trust by turning over to the person lawfully entitled thereto whatever securities he may have taken in good faith as a result of the prudent management of his ward's estate."

An investment of guardianship funds, made by a guardian may be challenged by the ward or person entitled thereto upon a final settlement, upon the ground that such investment was not made in good faith and in the exercise of due diligence, unless such investment was expressly authorized by statute or by order of court obtained prior to the making of the investment. If the investment was made under statutory authority, or pursuant to an order of court, the guardian cannot be held liable for losses resulting therefrom, in the absence of fraud or gross negligence. In the case of investments not so expressly authorized, the good faith and due diligence of the guardian may be challenged, and if successfully challenged, he will be held liable for any and all losses resulting from the investment. Good faith and due diligence on the part of the guardian, however, will protect the guardian and the sureties on his bond, from liability for losses.

In accordance with the foregoing principles, we must hold that there was error in refusing to sustain defendant's assignments of error based upon its exceptions to the issues submitted and to the refusal of the county court to submit issues as tendered upon the trial in said court by defendant, and in affirming the judgment of said court.

If there is any liability to plaintiffs for losses sustained by them from the investment of their funds in the preferred stock of defendant company, such liability is primarily that of their guardian. If such investment was made by him without good faith and without the exercise of due diligence, he and the sureties on his bond are primarily liable for such losses. Whether the defendant Tobacco Company in any event can be held liable for such losses, must be determined after all the facts in controversy have been established. The defendant Tobacco Company is entitled to a new trial in the county court, and to that end the judgment of the Superior Court must be

Reversed.